FILED
COURT OF APPEALS
DIVISION II

2013 APR -2 AM 8: 50

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 43269-2-II |
| Respondent, | |
| v. | |
| CHRISTOPHER J. PARTSCH, | UNPUBLISHED OPINION |
| Appellant. | |

JOHANSON, A.C.J. — Christopher J. Partsch appeals his conviction for failure to register as a sex offender, RCW 9A.44.130, arguing that the evidence was insufficient to support his conviction based on his interpretation of the statute. We affirm.[1]

## FACTS

Partsch was a registered sex offender supervised by the Department of Corrections (DOC) as a result of a May 2010 conviction for indecent liberties. On March 14, 2011, he registered 144 Main Street, Packwood, Washington ("Packwood address") as his address with the Lewis County Sheriff's Office. The DOC, however, rescinded its approval of that address. On September 8, 2011, Partsch registered with the sheriff's office as a transient. The sheriff's office required transient offenders to maintain a weekly transient address reporting log and

---

[1] A commissioner of this court initially considered this appeal as a motion on the merits under RAP 18.14 and then referred it to a panel of judges.

required them to report to the sheriff's office every Monday between 9 AM and 4 PM to submit their completed weekly log.

From October 10 to November 4, 2011, Partsch was incarcerated. The sheriff's office changed his address during this period to reflect that he was incarcerated. When Partsch was released, he changed his address back to "transient." Clerk's Papers (CP) at 7. In December 2011, Partsch was again briefly incarcerated. On December 13, 2011, after he was released, he went to the sheriff's office and received a transient address reporting log.

Partsch submitted a completed transient address reporting log on December 19, 2011. The log showed that he spent five nights between December 13 and 19 at his former address in Packwood. Partsch did not submit another log.

Officials took him into custody on a DOC warrant on January 5, 2012. The State charged Partsch with failure to register as a sex offender between December 27, 2011 and January 5, 2012, and failure to register a new residence address within three business days of moving or failure to report weekly as a transient. RCW 9A.44.130(4), (5)

Partsch waived his right to a jury trial. He testified at his bench trial that he believed that if he stayed at a fixed address for three consecutive days, it became a fixed address. He, therefore, thought that he was no longer required to register weekly as a transient because he acquired a residence when he submitted the December 19 log showing that he stayed at the Packwood address for five days.

Lewis County Sheriff's Detective Jamie McGinty stated that he received the December 19 transient log but that Partsch never properly changed his residence address from "transient" to the Packwood address by submitting a new address form in person or by sending the form to the

sheriff's office via certified mail. RP at 42. Consequently, because his residential reporting status remained "transient," Partsch was required to continue to submit weekly logs. RP at 44.

The superior court found Partsch guilty and sentenced him to 18 months in custody. Partsch appeals.

ANALYSIS

Partsch contends that the State failed to demonstrate that he knowingly failed to comply with the requirements of RCW 9A.44.130.[2] He first argues that RCW 9A.44.130(4)(a) "does not specifically impose any registration requirement upon transients who obtain housing within the same county in which they [have] registered" because a transient does not have a "residence address" and cannot, then, be said to have "change[d] his or her residence address," triggering the requirement to provide the sheriff with formal notice under RCW 9A.44.130(4)(a). Br. of

---

[2] RCW 94.44.130 provides, in relevant part:

(1)(a) Any adult or juvenile residing whether or not the person has a fixed residence, . . . who has been found to have committed or has been convicted of any sex offense . . . shall register with the county sheriff for the county of the person's residence . . .

. . . .

(4)(a) *If any person required to register pursuant to this section changes his or her residence address within the same county,* the person must provide, by certified mail, with return receipt requested or in person, signed written notice of the change of address to the county sheriff within three business days of moving.

. . . .

(5)(a) Any person required to register under this section who lacks a fixed residence shall provide signed written notice to the sheriff of the county where he or she last registered within three business days after ceasing to have a fixed residence. . . . .

(b) A person who lacks a fixed residence must report weekly, in person, to the sheriff of the county where he or she is registered. . . . The person must keep an accurate accounting of where he or she stays during the week and provide it to the county sheriff upon request.

(Emphasis added.)

Appellant at 10; *see State v. Pickett*, 95 Wn. App. 475, 479, 975 P.2d 584 (1999) (stating that "'residence' and 'residence address' connote some permanence or intent to return to a place").[3] The State counters that when Partsch ceased to be transient and obtained a fixed residence, he was "in a different position or status in regards [sic] to his" residential address and was, therefore, required to comply with RCW 9A.44.130(4)(a) because he "change[d]" his "residence address." Br. of Resp't at 10-11.

## I. Standard of Review

Evidence is legally sufficient to support a guilty verdict if any rational trier of fact, viewing the evidence in the light most favorable to the State, could find the elements of the charged crime beyond a reasonable doubt. *State v. Longshore*, 141 Wn.2d 414, 420-21, 5 P.3d 1256 (2000). This court interprets all reasonable inferences in the State's favor. *State v. Hosier*, 157 Wn.2d 1, 8, 133 P.3d 936 (2006). Direct and circumstantial evidence carry the same weight. *State v. Varga*, 151 Wn.2d 179, 201, 86 P.3d 139 (2004). Credibility determinations are for the trier of fact and are not subject to review. *State v. Cantu*, 156 Wn.2d 819, 831, 132 P.3d 725 (2006).

## II. RCW 9A.44.130(4)(a) & "Change" of Residence Address

Partsch's claim focuses on what it means to "change" a residence address. Br. of Appellant at 8-9. Partsch challenges the State's interpretation of RCW 9A.44.130(4)(a). The meaning of a statute is a question of law reviewed de novo. *State v. Breazeale*, 144 Wn.2d 829, 837, 31 P.3d 1155 (2001); *State v. J.M.*, 144 Wn.2d 472, 480, 28 P.3d 720 (2001).

---

[3] *Pickett* analyzed a former version of the registration statute that did not contain any registration provisions for homeless sex offenders. In response, the legislature amended the statute to add RCW 9A.44.130(5)(a), (b) (effective June 7, 1999), to require transient offenders to register weekly.

When interpreting a statute, we seek to "determine the legislature's intent." *State v. Bertrand*, 165 Wn. App. 393, 414, 267 P.3d 511 (2011) (Quinn-Brintnall, J., concurring) (quoting *State v. Jacobs*, 154 Wn.2d 596, 600, 115 P.3d 281 (2005)), *review denied*, 175 Wn.2d 1014 (2012). "Where the language of a statute is clear, legislative intent is derived from the language of the statute alone." *State v. Engel*, 166 Wn.2d 572, 578, 210 P.3d 1007 (2009).

To determine a statute's "plain meaning," we look to the text, as well as "the context of the statute in which that provision is found, related provisions, and the statutory scheme as a whole." *Engel*, 166 Wn.2d at 578. "An undefined term is 'given its plain and ordinary meaning unless a contrary legislative intent is indicated.'" *Bertrand*, 165 Wn. App. at 414 (quoting *Ravenscroft v. Wash. Water Power Co.*, 136 Wn.2d 911, 920-21, 969 P.2d 75 (1998)); *see also State v. Taylor*, 150 Wn.2d 599, 602, 80 P.3d 605 (2003) (using dictionary to determine meaning of term).

If, at the conclusion of this inquiry, the statute remains susceptible to more than one reasonable interpretation, it is ambiguous. Absent legislative intent to the contrary, we apply the rule of lenity to interpret the statute in the defendant's favor. *Jacobs*, 154 Wn.2d at 601; *see also State v. Velasquez*, __ Wn.2d __, 292 P.3d 92 (2013).

*Plain Meaning*

The term "change" in RCW 9A.44.130(4)(a) is undefined. Partsch's argument, however, would require us to restrict the meaning of "change" to "substitute" or "switch," and require the reporting of a residential address under RCW 9A.44.130(4)(a) only when an offender substitutes one residential address with another residential address. *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 373-74 (2002).

The ordinary definition of "change," however, includes: "to make different," "ALTER," "MODIFY," "to give a different position, status, course or direction to," and "to give a contrary character or trend to: REVERSE." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 373. We decline to restrict the plain and ordinary meaning of the term "change," which in addition to switching or substituting, encompasses an alteration in position or status with respect to a residence address. *See Taylor*, 150 Wn.2d at 602. Our interpretation is consistent with the "the context of the statute in which that provision is found, related provisions, and the statutory scheme as a whole." *Engel*, 166 Wn.2d at 578. RCW 9A.44.130(1)(a) sets out the legislature's intent to require "[a]ny" adult or juvenile offender to register regardless of residential status.[4]

Accordingly, we hold that section (4)(a) of the statute imposes an additional address registration requirement on former transients who acquire a residence address. Partsch did not comply with this requirement.

### III. RCW 9A.44.130(5)(a), (b)

Partsch also argues that he did not violate RCW 9A.44.130(5)(a), (b) for failing to register as a transient because he was not transient during the charging period. He contends that his final transient log demonstrates that he was residing at the Packwood address effective

---

[4] Because the statute is not ambiguous, we need not look to legislative history. We note, however, that even were "change" susceptible to more than one reasonable interpretation, our statutory interpretation is consistent with the legislature's desire to "assist local law enforcement to agencies' efforts to protect their communities" because "sex offenders often pose a high risk of reoffense." LAWS OF 1990, ch. 3, § 401. This intent was reiterated by the legislature when, post-*Pickett* it amended the reporting law to require reporting of not only offenders with an address, but transient offenders. LAWS OF 1999, 1st Spec. Sess., ch. 6, § 1 ("The legislature intends that *all* sex and kidnapping offenders . . . shall do so regardless of whether the person has a fixed residence") (emphasis added)).

No. 43269-2-II

December 19, 2011, and the trial court acknowledged that there was evidence that Partsch had moved back to this address during this period.

Residential status is not an element of the crime of failing to register. *State v. Peterson*, 168 Wn.2d. 763, 773-74, 230 P.3d 588 (2010). The State, consequently, had no obligation to prove that Partsch was in fact transient during the period in which he was registered as a transient with the sheriff's office. *Peterson*, 168 Wn.2d at 771 (rejecting appellant's contention that "the [S]tate needed to prove the fact that [he] was homeless").

The evidence, when viewed in the light most favorable to the State, is sufficient to show that Partsch registered with the sheriff's office as a transient and did not change his residential status or address to a fixed residence. Thus, we hold that the evidence was sufficient to support the trial court's finding that he failed to comply with the weekly transient check-in requirements of RCW 9A.44.130(5)(b) and he failed to inform the sheriff's office of a change to a fixed address as required by RCW 9A.44.130(4)(a).

We affirm Partsch's conviction for failure to register as a sex offender.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Johanson, A.C.J.

We concur:

Van Deren, J.

Bjorgen, J.

7